UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL E. COOK,

        Plaintiff,

v.

WARREN SCREW PRODUCTS, INC.,

        Defendant.

_____/

Case No. 22-11494

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [16]**

This is an employment discrimination case in which Plaintiff Paul E. Cook brings discrimination, failure to accommodate, and retaliation claims under the Americans with Disabilities Act ("ADA") against his former employer, Warren Screw Products, Inc. ("Defendant"). The matter is before the Court on Defendant's motion for summary judgment.[1] (ECF No. 16.) Plaintiff opposes the motion. (ECF No. 19.) Defendant has filed a reply. (ECF No. 21.) Pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), Defendant's motion will be decided on the briefs and without oral argument. For the reasons below, the Court GRANTS Defendant's motion for summary judgment.

**I.    Background**

Plaintiff began his employment with Defendant on September 20, 2021, as a delivery truck driver. (ECF No. 16-3, PageID.154.) During his fourth day on the job, a Thursday, he became sick. (*Id.* at PageID.159.) He testified that he walked into the office

---

[1] Plaintiff initially brought state law claims along with the ADA claims, but the Court declined to exercise supplemental jurisdiction over those claims and dismissed them without prejudice. (ECF No. 3.) Thus, the Court will not address the state law claims despite the parties doing so in their briefing.

1

of Tom Shelton, Defendant's materials manager, and told him that he wasn't feeling well due to stomach issues. He did not ask to leave work. He further testified that he was "in and out of the bathroom the rest of the day" due to diarrhea and stomach cramps. (*Id.* at PageID.159-60.) He continued to work that day as well as the next day despite continuing to have stomach issues. Plaintiff did not have any further discussions with Mr. Shelton regarding his health on those days. Near the end of the workday on Friday, Mr. Shelton told Plaintiff that he expected him to come into work the next day. That conversation revealed a schism between the two with Plaintiff indicating that he thought he would only have to work on Saturdays occasionally and Mr. Shelton informing him that he had to work every Saturday. (*Id.* at PageID.164.) Despite this, Plaintiff worked that Saturday, although the diarrhea made it "rough." (*Id.* at PageID.167-68.)

Plaintiff did not come into work on Monday, September 27. He testified that he had an accident with diarrhea on his way to work, so he called and left a voicemail saying he was not coming in that day. (*Id.* at PageID.169.) He sent text messages to Mr. Shelton that day and the next day, stating he was still having stomach issues and would not be coming to work. (ECF No. 16-13.)

Plaintiff visited his doctor on Wednesday, September 29, and was prescribed antibiotics. (ECF No. 16-3, PageID.170.) Plaintiff testified that his doctor thought he had some kind of stomach bug or stomach virus. Plaintiff texted Mr. Shelton, who told him to maintain all further communications with Ciara Kane, Defendant's human resources manager. (ECF No. 16-13.) Plaintiff emailed Ms. Kane a doctor's note stating that he was seen on September 29, 2021, may return to work on October 6, 2021, and will be out of

2

work from September 27, 2021, to October 5, 2021. (ECF No. 16-7.) The note did not contain any information regarding his health condition.

On the morning of October 4th, Plaintiff sent an email to Ms. Kane stating, "I have a Dr. Appt. today at 2:30. I will inform you of my visit when I get out." (ECF No. 16-8.) Plaintiff testified that he went back to see his doctor because he still was not feeling well. (ECF No. 16-3, PageID.190.) Plaintiff's doctor told him to keep taking antibiotics. (*Id.* at PageID.246.) Plaintiff was given another doctor's note during that visit, which stated that he had been seen on October 4, 2021, may return to work on October 11, 2021, and will be out of work from September 27, 2021, to October 10, 2021. (ECF No. 16-9.) Again, the note did not contain any detail about Plaintiff's medical condition. Plaintiff emailed pictures of the note to Ms. Kane that evening with the subject line "Work" and a message, "Please let me know if you get this. Thank you." (ECF No. 16-8.)

After receiving the second note, Ms. Kane called Plaintiff and asked if he could work a limited schedule to complete mandatory deliveries, because Defendant had been utilizing expeditors and other services to make those deliveries, which was very costly. (ECF No. 16-10, PageID.315.) Ms. Kane testified that Plaintiff rejected this idea and stated that he could not work "unless there's a toilet in the truck." (*Id.*)

On October 5, Ms. Kane responded to Plaintiff's email as follows: "Thank you for providing the attached note, it has been received. We do need the company truck keys and gas card back ASAP. We can not hold off on the position job duties until 10/10/2021. When are you able to drop those off?" (ECF No. 16-8.) Plaintiff responded by asking, "I'm assuming I'm fired?" (ECF No. 16-11.) Ms. Kane responded by stating, "We are working to determine how to move forward now. A final decision has not been made regarding

3

your employment status. We are requesting the company property in order to continue business operations while we come to a decision." (*Id.*) Plaintiff's response was: "The keys are in the grey desk with the scale. The gas card is in the truck." (*Id.*) Ms. Kane questioned why the items were left in those locations and Plaintiff stated that Mr. Shelton told him to put them there. (*Id.*) Mr. Shelton denied telling Plaintiff to leave the keys in the desk and testified that he asked Ms. Kane to contact Plaintiff about the keys when he could not find them. (ECF No. 16-12, Page.372-74.) Mr. Shelton stated that he would not have the truck keys placed near the entrance where employees come in and out and that drivers usually keep the keys with them. (*Id.*)

On Friday, October 8, Plaintiff went to the facility to pick up his paycheck. (ECF No. 16-3, PageID.200.) He told Ms. Kane that he was feeling better and would be coming to work the following Monday, but Ms. Kane told him, "we don't need you anymore." (*Id.* at PageID.201.) Ms. Kane testified that Plaintiff was terminated because by leaving the keys and card onsite, he was indicating that he did not want to return to work. (ECF No. 16-10, PageID.309, 331.)

Plaintiff now alleges that his termination was unlawful disability discrimination and retaliation. Plaintiff also claims that Defendant failed to accommodate him by not giving him a modified responsibility list or honoring his return-to-work date.

## II.     Summary Judgment Standard

Summary judgment under Federal Rule of Civil Procedure 56(a) is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When reviewing the record, "'the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its

4

favor.'" *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (quoting *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). Furthermore, the "'substantive law will identify which facts are material,' and 'summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden "of establishing the 'absence of evidence to support the nonmoving party's case.'" *Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once the moving party has met its burden, the nonmoving party 'must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor.'" *Id.* at 839 (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403 (6th Cir. 1992)).

### III. Analysis

The ADA prohibits discrimination against a qualified individual based on disability. 42 U.S.C. § 12112(a). Disability discrimination includes a failure to make reasonable accommodations. § 12112(b)(5)(A). The ADA also prohibits retaliation. § 12203(a). The Court addresses each of Plaintiff's claims in turn.

#### A. Discrimination

When there is no direct evidence of discrimination, claims are analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 319-20 (6th Cir. 2019). The plaintiff must first establish a prima facie case of discrimination by showing that (1) he was disabled, (2) he was otherwise qualified for the position, with or

5

without reasonable accommodation, (3) he suffered an adverse employment decision, (4) the employer knew or had reason to know of the disability, and (5) he was replaced or the position remained open. *See id.* at 320 (citation omitted). The burden of proof then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802. Once the employer articulates such a reason, the burden of proof returns to the plaintiff to rebut the proffered reason by showing it was a pretext for discrimination. *Id.* at 804.

The term "disability" is defined in the ADA as: "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff argues that a reasonable jury could find that he was disabled under the first or third definitions. The Court disagrees.

Plaintiff attempts to draw an analogy between this case and *Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1225 (9th Cir. 2022), where the court held that a temporary impairment can satisfy the first definition of disability, known as "actual disability." But that holding did not alter the requirement that such an impairment substantially limit one or more major life activities. *See id.* "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." § 12102(2)(A). "[A] major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." § 12102(2)(B). Here, Plaintiff does not

6

identify how any physical impairments he had impacted one or more of his major life activities. To the extent Plaintiff suggests he was unable to make deliveries due to his need to use the bathroom, a plaintiff is not considered disabled simply because he is "unable to perform a discrete task or a specific job." *See Booth v. Nissan N. Am., Inc.*, 927 F.3d 387, 394 (6th Cir. 2019) (citation omitted). Instead, a plaintiff must show that his impairment limits his ability "to perform a class of jobs or a broad range of jobs." *Id.* Plaintiff has not even attempted to make this showing. And to the extent Plaintiff's health problem affected his digestive or bowel functions, Plaintiff does not argue that it substantially limited those functions. Moreover, "the duration of an impairment" remains a relevant factor in determining whether it substantially limits a major life activity. *See* 29 C.F.R. Pt. 1630, App'x, § 1630.2(j)(1)(ix) (noting that "[i]mpairments that last only for a short period of time are typically not covered [by the first prong of the definition of disability], although they may be covered if sufficiently severe") (internal quotation marks and citation omitted). Plaintiff's impairments admittedly lasted a short period of time, and as discussed above, were not sufficiently severe. Thus, a reasonable jury could not conclude that Plaintiff had an actual disability as defined in the ADA.

With regard to the third definition, "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." § 12102(3)(A). This provision does "not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less." § 12102(3)(B).

7

Plaintiff characterizes the fact that Defendant called and asked him to come back to work on a reduced schedule prior to the date on his doctor's note as a "subpar 'attempt' to accommodate him" and argues that this shows he was regarded-as-disabled. (*See* ECF No. 19, PageID.458.) But the fact that Defendant asked him to come back to work actually cuts against his argument, since the regarded-as-disabled prong is meant "to allow individuals to be judged according to their actual capacities, rather than through a scrim of myths, fears, and stereotypes accruing around a perceived impairment."[2] *See Neely v. Benchmark Family Servs.*, 640 F. App'x 429, 436 (6th Cir. 2016) (internal quotation marks and citation omitted). Moreover, as Defendant notes, any impairments associated with Plaintiff's health condition were "transitory and minor." *See* § 12102(3)(B). At least one other court has found a virus that may give rise to diarrhea analogous to the flu, which falls within the "transitory and minor" exception. *See Lewis v. Fla. Default Law Grp., P.L.*, No. 8:10-cv-1182, 2011 U.S. Dist. LEXIS 105238, at *21-25 (M.D. Fla. Sept. 16, 2011) (citing to the 2008 House Judiciary Committee Report, p. 18, which explained that "absent this exception, the third prong of the definition would have covered individuals who are regarded as having common ailments like the cold or flu, and this exception responds to concerns raised by members of the business community regarding potential abuse of this provision and misapplication of resources on individuals with minor ailments that last only a short period of time"). Thus, Plaintiff cannot establish that he was regarded-as-disabled.

---

[2] This intention was expressed by Congress when it passed the original ADA. When passing the ADA Amendments Act of 2008, Congress indicated it continued to hold that view. *See* 29 C.F.R. Pt. 1630, App'x, § 1630.2(l) (citation omitted).

Because Plaintiff has not shown that there is a genuine issue of material fact as to whether he had a disability, he cannot establish a prima facie case of disability discrimination.[3] Defendant is therefore entitled to summary judgment on this claim.

**B.     Failure to Accommodate**

To establish a prima facie failure to accommodate claim, the plaintiff must show that (1) he was disabled within the meaning of the ADA; (2) he was otherwise qualified for the position, with or without reasonable accommodation; (3) the employer knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018) (citations omitted). Once the plaintiff establishes his prima facie case, the burden shifts to the employer to prove that a proposed accommodation would impose an undue hardship on the employer. *See id.*

As discussed above, there is no evidence that Plaintiff was disabled or regarded-as-disabled within the meaning of the ADA. Moreover, to the extent Plaintiff argues he was regarded-as-disabled, such a finding would necessarily defeat his failure to accommodate claim. *See Baker v. Windsor Republic Doors*, 414 F. App'x 764, 774-76 (6th Cir. 2011) (affirming the district court's reliance on *Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 467 (6th Cir. 1999), to hold "that binding Sixth Circuit precedent mandate[s] 'that a regarded-as disability finding would obviate the employer's obligation to reasonably accommodate the plaintiff'" (quoting *Baker v. Windsor Republic Doors*, No. 1:06-cv-01137, 2009 U.S. Dist. LEXIS 37176, at *30 (W.D. Tenn. May 1, 2009))). Thus, Plaintiff

---

[3] Due to this finding, the Court need not address the parties' arguments regarding the second and fourth elements of Plaintiff's prima facie case or the issue of whether Defendant's proffered reason for the termination was a pretext for discrimination.

cannot establish a prima facie failure to accommodate case,[4] and Defendant is entitled to judgment as a matter of law on this claim as well.

### C. Retaliation

To prove retaliation under the ADA, the plaintiff need not prove that he had a disability. *See Baker*, 414 F. App'x at 777 n.8. Instead, he must show that 1) he engaged in protected activity, 2) he suffered an adverse employment action; and 3) there was a causal connection between the protected activity and the adverse action. *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997). When there is no direct evidence of retaliation, a plaintiff's claim is analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp.*, 411 U.S. at 802-04, which is described above.

Plaintiff argues that the submission of his doctor's notes constituted protected activity. While the Sixth Circuit has held "that requests for accommodation are protected acts," *see A.C. v. Shelby County Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013), the question is whether Plaintiff made "a 'good-faith request for reasonable accommodations,'" *see id.* at 698 (quoting *Baker*, 414 F. App'x at 777 n.8). "'[M]edical leave can constitute a reasonable accommodation' under certain circumstances." *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 561 (6th Cir. 2022) (quoting *Williams*

---

[4] Because Plaintiff cannot meet the first prong of his prima facie case, the Court need not address the remaining elements. The Court notes, however, that to the extent Plaintiff now argues he could have been given a modified responsibility list, there is no evidence in the record to suggest that he requested such an accommodation. It is the employee who bears the burden of proposing reasonable accommodations. *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 983 (6th Cir. 2011). And when Defendant asked Plaintiff if he could work a reduced schedule prior to the return date on his doctor's note, he dismissed this possibility. Thus, he did not engage in the interactive process with his employer. *See Brumley*, 909 F.3d at 839-41 (finding that the plaintiff did not state a prima facie failure to accommodate claim because she voluntarily abandoned the interactive process with her employer).

*v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 394 (6th Cir. 2017)). To assess reasonableness, courts consider "(1) the amount of leave sought; (2) whether the requested leave generally complies with the employer's leave policies; and (3) the nature of the employee's prognosis, treatment, and likelihood of recovery." *Id.* at 562.

Here, Plaintiff submitted two bare-bones doctor's notes with no accompanying explanation regarding his health condition. Thus, the record does not give rise to an inference that Plaintiff made a good faith request for a reasonable accommodation. *Cf. Hopper v. Bernstein Allergy Grp., Inc.*, No. 1:18-cv-671, 2020 U.S. Dist. LEXIS 86688, at *28 (S.D. Ohio May 18, 2020) (finding that a reasonable jury could conclude that a request for time off constituted a good-faith request for a reasonable accommodation when the plaintiff told her supervisors that she was unable to return to work because she had been admitted to the hospital for chest pain, her stress test result was abnormal, and she was going to undergo further testing; her doctors would provide her with a release to return to work narrative; and she could provide additional medical documentation). Because Plaintiff did not engage in protected activity, he cannot establish a prima facie ADA retaliation case.[5] Defendant is therefore entitled to summary judgment as to this claim.

## IV.  Conclusion

For the reasons above, Defendant's motion for summary judgment is GRANTED.

SO ORDERED.

>       s/Nancy G. Edmunds
>       Nancy G. Edmunds
>       United States District Judge

Dated: February 5, 2024

---

[5] Due to this finding, the Court need not address the issues of causation and pretext.

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 5, 2024, by electronic and/or ordinary mail.

                                          s/Lisa Bartlett
                                          Case Manager